UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VANDOR CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:15-cv-00838-RLY-TAB |
| ) | |
| MATTHEWS INTERNATIONAL CORP, ) | |
| MATTHEWS INTERNATIONAL CREMATION ) | |
| DIVISION, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON PLAINTIFF'S MOTION TO STRIKE**

**I.    Introduction**

At issue is Plaintiff Vandor Corporation's motion to strike two of Defendants Matthews International Corp.'s and Matthews International Cremation Division's affirmative defenses.[1] [Filing No. 56.] The affirmative defenses allege inequitable conduct on the part of Vandor, its patent attorney, and three individual inventors, which would invalidate the patent Vandor is seeking to enforce against Matthews. Vandor argues that Matthews failed to meet the heightened pleading particularity requirements of Rule 9(b). However, Vandor tries to set the bar higher than the rule requires. Matthews' affirmative defenses adequately set out "the specific who, what, when, where, and how" of the alleged inequitable conduct, as required by *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). Therefore, the Court denies Vandor's motion to strike Matthews' affirmative defenses numbers five and six. [Filing No. 56.]

---

[1] The Court collectively refers to both Defendants as Matthews.

Vandor filed this action in 2015 alleging Matthews violated its patent, U.S. Patent No. 8,104,151. The '151 patent covers a "lightweight casket having foldable features." [Filing No. 1.] The Court stayed the action during the Patent and Trademake Office's inter partes review of the '151 patent, but the Court lifted the stay following the PTO's decision upholding the patent. With the case active, Vandor moved to strike affirmative defenses from Matthews' answer. In response, Matthews filed its amended answer, reasserting the affirmative defenses. In this motion, Vandor again seeks to strike Matthews' fifth and sixth affirmative defenses, in which Matthews alleges the '151 patent is invalid due to inequitable conduct.

## II. Discussion

Vandor argues that Matthews' fifth and sixth affirmative defenses should be stricken because Matthews fails to sufficiently plead inequitable conduct. In Matthews' fifth affirmative defense, it alleges Vandor, patent attorney Harold C. Moore, and the three inventors, Gary L. Cox, Gerald H. Davis, and Chad L. Eversole, all committed inequitable conduct by failing to disclose 16 prior art references that were material to patentability. Vandor argues this affirmative defense should be stricken because Matthews fails to adequately plead the requisite knowledge that would allow for the inference of intent, or the "who, what, when, where, and how" of the alleged inequitable conduct, as required by *Exergen,* 575 F.3d at 1328. In its sixth affirmative defense, Matthews alleges Moore committed a fraud on the PTO when he petitioned to revive the '151 patent, which Matthews believes was intentionally abandoned and not revivable. Vandor argues Matthews fails to present evidence of a reasonable basis for this belief.

Matthews argues that it would waste judicial resources to strike the affirmative defenses now because, if evidence of inequitable conduct is discovered, Matthews will have to yet again amend its answer. Further, Matthews argues striking the defenses risks future discovery disputes

regarding the scope of the case. Surprisingly, Vandor concedes that, "During discovery, Matthews will have the opportunity to obtain documents relating to every aspect of the prosecution of the '151 patent. At that point, Matthews will have a much more solid ground upon which to plead facts, should there be any to plead." [Filing No. 64, at ECF p. 9.] Arguably, such permissive discovery would moot the entire issue because there would be no purpose to striking the affirmative defenses if Matthews is nonetheless permitted to conduct discovery into "every aspect of the prosecution of the '151 patent." Nevertheless, the Court addresses the substance of Vandor's motion to strike.

The two affirmative defenses at issue are based on inequitable conduct. Charges of inequitable conduct are not to be taken lightly. They accuse one or more people involved in prosecuting a patent of violating their duty of candor and good faith to the PTO. 37 C.F.R. § 1.56. Individuals before the PTO have a "duty to disclose to the Office all information known to that individual to be material to patentability." *Id.* A patent is not valid "if the duty of disclosure was violated through bad faith or intentional misconduct." *Id.* A finding of inequitable conduct renders the entire patent unenforceable (i.e. it is not case specific) and can have far-reaching effects, including spreading to other patents, spawning antitrust and unfair competition claims, destroying attorney-client privilege under the crime or fraud exception, and ruining the patent attorney's reputation. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011). Claims of inequitable conduct have gummed up the patent system, leading to over-disclosure of marginally relevant prior art at the PTO and plaguing the Courts. *Id.* at 1289-90. In response, the Federal Circuit has tightened the standards on the equitable doctrine "that has been overused to the detriment of the public." *Id.* at 1290.

Whether inequitable conduct has been properly pleaded is governed by Federal Circuit law because it "pertains to or is unique to patent law." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (quoting *Cent. Admixture Pharm. Servs., Inc. v. Adv. Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007)). "'[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity' under Rule 9(b)." *Id.* (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Systems, LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)).

   a. **Fifth Affirmative Defense**

Regarding Matthews' fifth affirmative defense, Vandor contends that Matthews failed to plead the what, where, or how showing material information was withheld, and failed to show the information was knowingly withheld to deceive the PTO. To satisfy Rule 9(b)'s particularity requirement regarding the materiality of a withheld or misrepresented reference, "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328.[2] The Court, however, is not convinced. To satisfy the what and where requirements, the pleading must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *Id.* at 1329. In other words, what information was withheld, and where can that information be found. To satisfy the how (and why) requirement, the

---

[2] Matthews argues this heightened standard is inapplicable because it applies to counterclaims—not affirmative defenses. However, this district has expressly held that *Exergen*'s heightened standard applies to both counter claims and affirmative defenses. *Capital Mach. Co. Inc. v. Miller Veneers, Inc.*, 1:09-cv-00702-JMS, 2012 WL 243563, at *2 (S.D. Ind. Jan. 25, 2012). Further, the Federal Circuit applied the heightened pleading standard to affirmative defenses and counterclaims alike in *Exergen*. 575 F.3d. at 1317. Matthews also fails to provide an alternative pleading standard from the Federal Circuit or elsewhere for affirmative defenses based on inequitable conduct. Regardless, the Court finds Matthews clears *Exergen*'s heightened standard.

pleading must "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record." *Id.* In other words, "'how' an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1330.

The affirmative defense alleges Harold C. Moore, Gary L. Cox, Gerald H. Davis, and Chad L. Eversole committed inequitable conduct when they withheld 16 prior art references from the PTO, 10 of which Vandor had submitted to the PTO on eight other occasions. Matthews alleges Claim 1 of the '151 patent shows a casket with two configurations. In the first, the side panels extend upward, making a casket body. In the second configuration, the panels extend in other directions, making it more compact. Matthews contends each of the 16 prior art references teach these configurations, but the Examiner at the PTO cited the configurations as the innovation for which the '151 patent was patentable. [Filing No. 44, at ECF p. 11.] As an example, Matthews points to U.S. Patent No. 6,317,943):

> [The '943 patent] is a patent directed to caskets that can be stored and shipped in "a relatively compact collapsed condition" and which "may be erected to adopt a relatively upright erected condition." The '943 patent discloses the same elements as the '151 patent, including a bottom panel, side panels, and end panels, "wherein the bottom panel, side panels and the end panels form a casket body at least in the first configuration." In particular, the '943 patent discloses side panels having a lower section between fold lines 15 and 23 and an upper section above fold line 23, and end panels having a lower section between fold lines 13 and 27, and an upper section above fold line 27. The '943 patent also discloses that in the first configuration (i.e., the configuration for use as a casket), the upper and lower sections all extend vertically upward, and that in a second configuration the upper sections extend in a direction other than vertically upward.

[*Id.* at ECF p. 10.]

Vandor first argues Matthews "fails to even attempt to plead the 'where,' 'what,' and 'how' of inequitable conduct for 12 of the 16" prior art references. [Filing No. 55, at ECF p. 7 (formatting altered).] However, Matthews' amended answer clearly focuses on four references as representative examples, and uses the '943 patent as a detailed example. [Filing No. 44, at

5

[ECF p. 10.] The lack of similar explication of 14 additional prior art references does not invalidate the entire affirmative defense.

Vandor argues the where element is lacking because Matthews' amended answer does not include the column, line number, and drawing figure where the withheld undisclosed prior references teach the elements of the '151 patent that made it patentable. However, Vandor does not cite any case law saying such specific citations are required. Matthews quoted specific language from the patent, which should allow Vandor and the Court to find the specific information by doing a simple word search. This showing is sufficient at the pleading stage.

Vandor next argues Matthews failed to plead what information within and how that information would have led the PTO to disallow the '151 patent. Vandor points out that Matthews does not plead that the prior art makes the '151 patent obvious or anticipated.[3] While Matthews does not use those words, Matthews points to the Examiner's reasons for allowance of the '151 patent, in which the Examiner said none of the references they reviewed included the two configurations of the '151 patent. [*Id.* at ECF p. 11.] Thus, Matthews' amended complaint satisfies the what and how requirements because it alleges the '151 patent would not have been patentable if the Examiner knew about the two configurations discussed in 16 references Vandor withheld.

---

[3] Vandor also cites and attaches Matthews' *inter partes* review petition, in which Matthews did not point include the '943 patent or the three other patents Matthews uses as examples in his amended answer. However, the Court does not consider this evidence or argument because it is a "matter outside the pleadings," which would take Vandor's motion outside of Rule 12, and instead make it a Rule 56 motion for summary judgment. *See Doss v. Clearwater Title Co.*, 551 F.3d 634, 639–40 (7th Cir. 2008). Even if the Court could consider the evidence and argument, it is unpersuasive because there are likely myriad reasons behind Matthews' decision regarding on which patents to focus during the *inter partes* review.

6

Vandor next argues Matthews failed to plead specific intent to deceive the PTO because the only evidence of intent Matthews cites is that Vandor had previously cited some of the references. Although knowledge and intent may be averred generally, the pleading must "include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with the specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). Further, the "mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during the prosecution of a related application, is insufficient to meet the threshold level of deceptive intent." *Id.* at 1331. "[O]ne cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." *Id.* at 1330.

However, unlike *Exergen*, which considered a single citation to a single patent in a single separate patent prosecution, Matthews alleges that Moore, Cox, Davis, and Eversole had cited the '943 patent on *eight* similar patent applications. Further, Matthews' response points to an exhibit to the amended complaint that shows Vandor cited another nine of the 16 references in those eight patent applications. While this does not prove that More, Davis, Cox, and Eversole withheld the references to deceive the PTO, it is enough to keep the pleading from being stricken.

b. **Sixth Affirmative Defense**

Vandor argues the pleading relies too much on "information and belief" without sufficient facts to serve as a reasonable basis for the belief. Matthews' sixth affirmative defense alleges Moore violated his duty of candor and good faith to the PTO by petitioning to revive the

7

'151 patent when he knew it had been intentionally abandoned. In November 2008, Vandor responded to an Office Action in the '151 patent. But Vandor did not respond to an Office Action dated December 2, 2008, and on June 30, 2009, the PTO issued a Notice of Abandonment. On August 12, 2011—over two years later, and nearly three years since Vandor's last action in the '151 patent—Moore filed a petition to revive the '151 patent on behalf of Vandor. In the petition, Moore stated that "[t]he entire delay in filing the required reply[,] from the due date for the required reply until the filing of a grantable petition under 37 C.F.R. [§] 1.137(b)[,] was unintentional." [Filing No. 44, at ECF p. 12.] Matthews alleges that the statement claiming that the entire delay was unintentional cannot reasonably be true, which constitutes a fraud on the PTO. For support, Matthews alleges:

> (i) Mr. Moore and/or personnel at the Law Firm received and docketed the receipt of the Office Action in a timely manner; (ii) Mr. Moore and/or personnel at the Law Firm docketed the due date for a response in the Law Firm's docketing system; (iii) Mr. Moore and/or personnel at the Law Firm timely notified Vandor of the Office Action and of the due date for a response; (iv) that Mr. Moore and/or personnel at the Law Firm were notified by the docketing system and/or personnel responsible for the docketing system when the due date for responding to the Office Action was becoming due, as well as each of the extendable due dates; (v) that Mr. Moore and/or personnel at the Law Firm were notified of the pending abandonment date of the '151 application prior to June 2, 2009; (vi) that Mr. Moore and/or personnel at the Law Firm notified Vandor prior to June 2, 2009 that failure to respond to the Office Action by June 2, 2009 would cause the application to become abandoned; (vii) that Vandor purposefully failed to provide instructions to timely file a response to the Office Action; (viii) that the Law Firm timely received the Notice of Abandonment from the PTO; (ix) that personnel from the Law Firm docketed the Notice of Abandonment and notified Mr. Moore and/or personnel working for Mr. Moore that the application had gone abandoned; (x) that Mr. Moore and/or personnel working for Mr. Moore timely notified Vandor that the application had become abandoned; (xi) that Mr. Moore and/or personnel working for Mr. Moore purposefully failed to respond to the Office Action and/or the Notice of Abandonment in a timely manner; (xii) that at some time during the period between the due date for a required reply to the Office Action until the petition to revive was filed, a decision was made to attempt to revive the application notwithstanding that one or more previous decisions had been made to not file a response to the Office Action or the Notice of Abandonment; and (xiii) that the filing of the petition to revive (sic) the [alleged

> unintentionally abandoned] application was fraud on the PTO in violation of the duty of candor and good faith in dealing with the [PTO].

[Filing No. 44, at ECF pp. 15-16.] Matthews alleges all of this on "information and belief." [*Id.* at ECF pp. 12-14.]

Vandor argues that Matthews can plead based on information and belief, "but only if the pleading sets forth the specific facts upon which the belief is reasonably based." [Filing No. 55, at ECF p. 14 (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009)).] Vandor argues Matthews only cites two specific facts: 1) there was an abandonment, and 2) it lasted two years. According to Vandor, everything else is mere supposition that cannot satisfy the particularity requirements of Rule 9(b). Vandor contends that "because every unintentional abandonment is improbable, the improbability of unintentional abandonment cannot possibl[y] allow the inference of intentional abandonment." [Filing No. 55, at ECF p. 13.] However, this reasoning requires the Court to assume the abandonment, at least at some point, was unintentional. If a prosecution was abandoned for two years despite all of the usual alerts and notifications in place to prevent unintentional abandonment, then suddenly revived for no apparent reason, it is reasonable to conclude the abandonment may have been intentional. While intentional abandonment is not necessarily more probable than unintentional abandonment, the standard at this phase is "reasonable basis," not "more probable than not." *See Exergen*, 575 F.3d at 1330.

Vandor asserts Matthews fails to identify why Vandor would intentionally abandon the '151 patent, only to try to revive it years later, or why Moore would risk his livelihood by lying to try to revive one patent. Having these explanations would bolster Matthews' claim. However, at this stage they are not necessary because Matthews shows it has a reasonable basis to believe the abandonment was intentional.

Vandor also argues Matthews contradicts itself. "While Matthews alleges that Mr. Moore failed to respond to the Office Action 'at the direction of and/or based on instruction from Vandor," Matthews conversely alleges that 'Vandor purposefully failed to provide instructions to timely file a response to the Office Action.'" [Filing No. 55, at ECF p. 14 (*comparing* Filing No. 44, at ECF p. 13 *with* Filing No. 44, at ECF p. 15).] However, these statements are not inherently contradictory. It can be true that Vandor both directed Moore not to file a response, and purposely failed to instruct Moore to timely file a response. The amended complaint does not allege Vandor failed to instruct Moore regarding *whether* to file a response, but that Vandor failed to instruct Moore to not, not file a response. In any event, such parsing of words should not be the text of whether to grant a motion to strike. The affirmative defenses at issue may proceed.

### III. Conclusion

While *Exergen* set a high bar for pleading inequitable conduct, Vandor's motion asks the Court to set it even higher. As discussed above, the Court denies Vandor's motion to strike. [Filing No. 56.]

Date: 1/17/2019

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.